Secretary of Defense, et al. Mr. Light for the appellants, Mr. Williams for the appellees. Mr. Light, good morning. Good morning, may it please the Court. This case concerns the right of a reporter to seek judicial review of the termination of his in bed status. The reporter, Mr. Anderson, seeks to determine whether or not he is entitled to a judicial review of the termination of his in bed status. He seeks to proceed in this appeal under two theories, the Administrative Procedures Act and retaliation in violation of the First Amendment. With regard to the Administrative Procedures Act, the Court needs to decide first whether there is an agency and in order to do that, the Court needs to determine whether the military authority exception applies. With regard to that exception, the legislative history demonstrates that Congress intended... The legislative history, what does the exception say? What does the statute say? It says that military authority exercised in a battlefield in time of war is not reviewable. Right. And then the question is, what is the meaning of that term military authority? There has not been a lot of case law to decide that. Do you think that's a difficult question? I do think it's a difficult question. The Court needs to take a functional approach to it. It's highly fact specific. And in this case, in the Doe case, this Court, it was in dicta, but did suggest that the military authority exception applies only to relationships between a soldier and their superior. And looking at an analogous situation involving the Federal Tort Claim Act, the Supreme Court has observed that the policy behind such an exception is well served in order to prevent a situation where, for example, a soldier is challenging an order being given to him as negligent. But when a situation involves non-military personnel, you don't have that concern. So if I were just to ask, colloquially speaking, does the action you're complaining of constitute the exercise of military authority, would you take the position that the answer to that could be no? It can be no, but it's a highly fact specific. And how is it not the exercise of military authority? Well, the exercise of military authority, if it's read as this Court read it in Doe, would involve only the relationship between a military superior and a soldier. I imagine it could be in certain circumstances also applicable. But there's nothing inherent about the terms exercise of military authority that say that it's only with regard to the relationship between a superior officer and a subordinate officer. That term itself is not defined, and it hasn't really been established in case law exactly what that term means. Which term? Excuse me? Which term? Military authority. Well, what other authority would it be to remove him from his embedded status? Well, the issue here is simply interpreting something that's very much like a contract. The military authority was creating the media ground rules, making judgment-laden decisions about what the rules should be and what would happen to somebody that terminated, that violated those rules, whether they should be terminated. So the enforcement of the… The enforcement of it would be because it involves judgment. But the simple question of whether it was violated is something that courts are well-equipped to determine, just like they determine contract disputes, whether a particular party violated the terms of a contract. That does not involve the kind of value judgments about and the exercise of a distinctly military function. So the APA includes a waiver of sovereign immunity. Yes. And is your understanding of the military authority provision that it sheds light on the scope of the waiver of sovereign immunity? Well, it defines what is meant by an agency. And obviously, if there's not an agency, there's no claim under the Administrative Procedures Act, and so there would not be a waiver under the APA. So would we apply the canon in construing that we ordinarily construe waivers of sovereign immunity to be narrow? Well, I think that there's a powerful presumption in favor of judicial review, as this Court observed in a case recently last year. And so you, I suppose, have competing canons, in a sense. Have we applied that presumption of reviewability in the context of a waiver determination on sovereign immunity? I realize we use that language. We use it about every year. But has it been applied in a relevant context to this? Well, I believe it's relevant in answering, for example, in the – in the context of defining sovereign immunity. I don't think it's been applied specifically to sovereign immunity. Okay. But the question that the Court needs to answer here is to define the term military authority. In the context of determining whether or not there has been a waiver of sovereign immunity. In the context of determining what is an agency, which is both – And the reason we want to know that is to determine whether it's within the APA waiver of sovereign immunity, right? Right. I mean, if that's – I mean, you can put as many steps in it as you want to, but that's what we're trying to do. And you don't have a case, I don't think, where we have used that presumption of reviewability for that particular exercise. Well, obviously, if the APA does not apply, then its sovereign immunity provision does not apply. Right. But the question of whether the APA applies, and therefore, the attached sovereign immunity applies, involves the question of the scope of the act. That's what I think I was trying to get you to admit when I was asking you if we had construed the – applied the canon of presuming reviewability in the context. That we're trying to find out whether that applies here, I don't think we've ever applied that canon of presuming reviewability in this context. I don't believe the Court's decided either way in this specific context. That would be consistent with what I suggested, I think. And just to understand the parameters of your argument, so on the text of the military exception, you're focused exclusively on the phrase military authority. That's correct. You don't take any issue with the notion that it was, insofar as military authority, it was authority that was exercised in the field in a time of war. We don't take any issue with that. I would like to reserve the rest of my time for rebuttal, although the Court doesn't have any further questions at this point. All right. Thank you. All right. Mr. Williams. Good morning. Good morning. May it please the Court, I'm Wayne Williams on behalf of Federal Appellees. The decision of the District Court should be affirmed for three reasons. The first reason is the District Court construed the Pro Se complaint liberally to contain all of the legal theories based on the factual assertions presented in that complaint. After liberally construing the complaint, the District Court applied the correct law, the correct legal standard, and ultimately dismissed the complaint for failure to state a claim and for lack of jurisdiction. Indeed, the majority of the decision of the District Court has not been presented here on appeal, outside of the appeal of not granting a leave to amend. Instead, on appeal, there are new, newly raised legal theories. So you call them newly raised legal theories, but if you put aside the APA claim for a second and just talk about the First Amendment claim, you don't take issue with the notion that a First Amendment claim was raised in the complaint? Yes. I do not take offense to that. So then the question is, was a First Amendment, I think you think the question is, was a First Amendment retaliation claim raised? Correct. And I guess my question is, why does it have to be a First Amendment retaliation claim? If somebody says, I was fired, I spoke, and then I was fired, that violated my First Amendment rights. Did they actually have to spell out, that violated my First Amendment rights because it was retaliation for my exercise of First Amendment rights? Why can't they just say, it violated my First Amendment rights? Your Honor, you have to put the defendant on notice as to your legal theory. And in this case, when you look at the balance of the complaint, it is clear that the constitutional right that the appellate believed had been violated was his constitutional right to be an embedded reporter. I don't think so. Here's the first paragraph, one of the complaint, the very first paragraph of the complaint, says, I'm seeking damages and injunctive relief. The damage is gone now. I'm seeking injunctive relief against defendants acting under color of law with the intent and purpose of depriving plaintiff of rights secured under the Constitution, First Amendment and Fifth Amendment, by ruling adversely against plaintiff for his exercise of constitutionally protected speech. Which means that what I'm complaining about is, I exercised constitutionally protected speech, and then I got an adverse result as a consequence of that. That sounds like, it doesn't use the word retaliation. I'm not sure that it has to use the word retaliation. What it sounds like it's saying is, I spoke, and then I suffered an adverse consequence. Ergo, my First Amendment rights were violated. However, when you look at the balance of the complaint, you see that at paragraph 50, he states that the defendants caused the termination of the embedded status without due process. And also at paragraph 50 of the complaint, at the time of his journalist's embedded termination, plaintiff possessed a constitutionally protected interest that he was deprived of without due process. I don't see how those, first of all, I'm not sure that those are inconsistent with what's in paragraph 1. But if you just look at paragraph 1 for a second, and you bear in mind that this is a pro se plaintiff. If you just look at paragraph 1, it's a pro se plaintiff who says this. What about that doesn't put somebody on notice that what I'm saying is, I was fired, or in this case, I was divested of my embedded status, because I exercised my First Amendment rights. I believe the district court also attempted to capture that in the footnote 10 of the district court opinion, where the district court did note that the plaintiff, the appellate, had identified a former news embargo, and that there had been antagonistic statements made to him. But he did not identify those individuals in the complaint, unlike the number of named defendants. And he never actually stated that because of the article that he wrote, his embedded termination status was removed. In fact, he always, and even in this court, wants to draw focus onto the video itself. I mean, these are sounding a lot like summary judgment arguments to me, because they're pretty finely reticulated points about the exact parameters of his claim, for purposes of the complaint, which is all we're talking about. I'm not even sure you guys are doing anything other than paragraph 1, and then add some facts. I spoke. Adverse action was taken against me before I spoke. Here's some of the ways in which I spoke, and he does spell that out. Yeah, there was a violation of my First Amendment rights. Even for a non-pro se plaintiff, that's stating a First Amendment claim, it seems to me. I'm not understanding how that's deficient. It seems to establish, when you look at the complaint, you look at his filings, after being placed on notice by the defendants of the motion to dismiss, that had construed the complaint to allege a First Amendment violation for removal of an embedded journalist position. And he just never comes back and states that, no, I'm not saying that my due process was violated because my embedded status was removed. He never takes that follow-on step and says, No, it's because of the words that were in the article that the ISAF officials took umbrage with. For his exercise of constitutionally protected speech, what is he talking about when he says, I suffered an adverse consequence for exercise of constitutionally protected speech? I do not know what was intended by that statement, Your Honor. And he does talk about the fact that he published an article in the complaint? He does, but he does not give any context of that article. He does not tie the decision of the military authorities that they actually removed him because of the article that he talks about in the video. However, moving past that, I mean, even if a First Amendment retaliation claim was reasonably raised by the complaint, the second thing that we have to look at is whether or not there is a corresponding waiver of sovereign immunity. And for a couple of reasons, there is not. The first reason is that this was a military coalition organized under the International Security Forces Afghanistan, which at the time fell under NATO command. The media ground rules, which he was found in violation of, was an actual ISAF agreement. And when he signed that agreement, he agreed, he noted that this was an ISAF agreement and that violation of this could result in the termination of his ISAF embedded status. So for purposes of the APA claim, you're making the argument that this was an exercise of military authority in the field at a time of war? Absolutely, Your Honor. And I take it when you say exercise of military authority, you mean exercise of U.S. military authority? It was an exercise of military authority pursuant to ISAF. However, even if you were able to disaggregate the decisions of the military officials here, there would still be no waiver of sovereign immunity pursuant to the APA. As ISAF, the APA would not apply because ISAF is not a United States agency, but the military authority exception would apply if you were able to disaggregate the decision of the military authorities, in this case, as their United States military authority status. I'm not sure I fully follow that, but it sounds like at the end of the day, in order for the military authority exception to apply, you'd have to be talking about the exercise of U.S. military authority. For the exception to apply, yes. No, for it to be needed, you would have to be talking about the U.S. If we're talking about the international aggregation of forces, then the waiver would not apply in the first place because it wouldn't be an agency of the U.S. at all. Absolutely wrong. Right. So it's only because if we get past that, the only time we need to decide whether the military exception would apply. That's correct, Your Honor. And you think it's clear that we can determine from the complaint. We don't have to know anything else, and we can say that it's clear that we're not talking about that we're outside sovereign immunity because we're talking about something other than U.S. authority. When you look at the complaint, he does mention that he was on a NATO base, and he mentions the media grounds rules. The media grounds rules are an ISAF agreement. And the determination that divestment of embedded status is executed by a U.S. military officer who signs it in their capacity as a U.S. military officer? In this case, they signed it in their capacity. The declaration is provided by a defendant, and the motion is dismissed. They signed their decisions as authorities under ISAF. Does the document actually say that? I'll check, Your Honor. It does not, Your Honor. Looking at Joint Appendix Page 33, the decision by Colonel Bush, it does mention him as a colonel in the United States Army, chief of public affairs. It doesn't just mention him as that. That's the only way that he's reflecting his title is as colonel in the U.S. Army, chief of public affairs. That is true, but if you look at the header of the memorandum, it's from the headquarters International Security Assistance Force, Joint Command, Kabul, Afghanistan. Sure, and he was definitely working there. I guess it's hard to look at the order and think that he wasn't acting in his capacity as a colonel in the U.S. Army. Let me just ask you one other point about sovereign immunity. As I understand our decisions, the waiver of sovereign immunity that's in the APA, Section 702, it applies to any claim against a federal government officer seeking injunctive relief for their actions in their official capacity. It doesn't have to be an APA claim. Our decisions, I think, say that 702 is just an across-the-board waiver of sovereign immunity any time a plaintiff sees a federal officer for injunctive relief. Is that how you understand it? It does provide a broad waiver of sovereign immunity. However, 701B1G, 702 still requires an agency action, which would then still bring us back to 701B1G. For an APA claim, but I'm saying for the First Amendment retaliation claim, if someone just files a suit against a federal officer for violation of First Amendment rights, then the waiver of sovereign immunity with respect to seeking injunctive relief, the waiver of sovereign immunity with respect to that claim comes from 702, even though it's not an APA claim. That is correct. Okay. But 702 still defines that it applies to agency actions. So the exclusions of 701 would still apply to 702. 702 wouldn't be completely unfound. Even in a non-APA claim? Even in a non-APA claim. It still has to be an agency defendant in order to fit with that argument. Okay. That's right. For the following reasons presented in our briefs, the decision of the district court should be affirmed, and the appeal should be rejected. Thank you. Thank you. How much time does Mr. Leib have? Okay. Thank you. May it please the Court. Judge Srinivasan, I agree with your suggestion that some of these issues are best resolved on summary judgment. There is not a sufficiently developed factual record in order for the appellees to raise the issue that this is a – that the officers were acting in their NATO capacity. The evidence of the complaint itself doesn't present a lot of facts with regard to that, and the attached exhibits seem to indicate that they were acting as U.S. officials. And it's certainly, by analogy to the common law doctrine of borrowed servants, certainly possible for them to be acting in both capacities. I don't imagine the United States is going to argue that their official – that they had control over their officials just because they were acting in their – they were detailed to NATO. And so I do think that what would be appropriate as a remedy here would be reversal of the decision to dismiss, and then the parties could proceed to summary judgment perhaps after an opportunity for discovery on that issue. Perhaps it's a late time to be asking this question, but is this case moved? Your Honor, the parties haven't briefed the issue. That doesn't matter. And I'd be happy to provide some supplemental briefing on that, but I think that there is – Well, what would the district court be doing at this point that would remedy any continuing harm to your client? It could provide declaratory relief. It could – Right. I mean, we don't just – we don't give advisory opinion. That's right. The State Arbitrary Court can't do that. Well – A declaratory judgment has to have some relief factor in the real world. Sure. And I'm not sure that I see what relief is left that we can do for your client here. Well, for example, he has suffered a harm to his reputation by having a determination – You're not going for damage. No, not damages. You're not going for damages. Is there any injunctive or any equitable relief that would still be available in this case? Yeah, his reputation would be repaired through a declaration. We don't sit for advisory opinion. I understand. We have to have some relief in the real world. Ray Donovan properly posed that question. What agency would I go to to get my reputation back? But the court didn't have one to give you. And it's not something the courts do. You have to have reputation plus in order to make out a claim. And there are cases that say that specifically, that just reputation is not enough to entitle you to due process. Is there something still left here that the court can do for you? Right. Well, I mean, this isn't a question of due process. This is a question – This is a question at this point of movement. And I want to know what relief it is that the court can actually give you. You can't come to court and say, he called me something bad and he was lying, and I want you to say he was lying unless you're also asking for judicial relief. Well, he's not just saying somebody's lying. He's alleging a constitutional violation. And the specific relief that would be granted for him would, for example, repair his reputation. But the question I think is – do you think that's a judicial remedy that we can – that would provide standing or would provide movement? So the specific aspect of the movement, I think you're asking about whether a decision from the court would – Is there anything left that a court can do that provides him judicial relief for a currently justiciable wrong? Yeah, I mean, he would, again, be part of the embed program. Would he go back in the embed? Can we order that? He would be eligible for it. In a court order, would he go back in the embed? Has he even asked for that? There's nothing in the complaint one way or the other with regard to that. He hasn't asked for that, right? He wants his status restored. I don't know if he specifically wants to go back to Afghanistan. Are there still embedded reporters? That's just a factual question. I assume there are. Do you know? In Afghanistan, are there still embedded reporters? In Afghanistan. There's nothing in the record one way or the other on that. Okay. Do you know? Do I know? I'm not supposed to decide on the basis of things outside the record, but do you know whether there are embedded reporters in Afghanistan? I don't personally know. Okay, thank you. Thank you. Thank you. Thank you.
judges: Henderson, Srinivasan, Sentelle